A. A. GRIFFING IRON COMPANY ET AL., DEFENDANTS IN
ERROR, v. THE LIVERPOOL, LONDON AND GLOBE IN-
SURANCE COMPANY, PLAINTIFF IN ERROR.

Argued June 18, 1902—Decided June 18, 1902.

Exemplification of the rule that in construing a policy of insurance
the whole of its provisions are to be taken together.

On error to the Supreme Court.

For the plaintiff in error, *Richard V. Lindabury.*

For the defendants in error, *James B. Vredenburgh.*

The opinion of the court was delivered by

PITNEY, J.  This was an action upon a policy of fire in-
surance written by the plaintiff in error for the A. A. Griffing
Iron Company.  The sole question is whether the policy
covered certain property that was destroyed by fire, and turns
upon the construction of the descriptive portion of the policy.
The proofs show that the iron company was the owner of
extensive works at Jersey City, the greater part of which
was contained in a large cluster of buildings, adjoining each
other, used for various purposes, and designated according to
their different uses, viz., foundry, machine shop, stock and
storeroom, carpenter shop, core oven house, office building, &c.
Standing upon the same property and used in connection with
the buildings just mentioned, but detached by a considerable
distance from them, was a frame building, known as the
sand shed, in size about two hundred and ten feet long and
about forty-one feet wide, with two additions or extensions
of considerable size, one at the end and the other at the side
of the main building.  This building and its additions were
used, in part, for the storage of moulding sand, such as was
used daily in the foundry of the insured.  Portions of the

building were used for the storage of patterns that were used in moulding, and of machinery and merchandise of various kinds. In one part there were stalls for some of the horses used at the works, other horses being stabled in one of the clustered buildings. It was this sand shed and its contents that were destroyed by the fire that gave rise to this action.

The situation of the property of the insured and its customary use were substantially as above detailed, both at the time the policy in suit was written and also at the time of the fire. This policy was one of about eighty policies, substantially concurrent, written by nearly as many different insurance companies, all of which were in force at the time of the fire.

The descriptive portion was printed upon a separate sheet of paper, and this was attached to the policy; the amount insured upon each item being inserted, however, in typewriting. The description was inserted immediately after that portion of the policy (it was in standard form) whereby the insurance company undertook to insure the iron company against loss or damage by fire, "to an amount not exceeding twenty-five thousand dollars, to the following-described property while located and contained as described herein and not elsewhere, to wit" (then follows descriptive sheet, viz.) :

### "A. A. Griffing Iron Company.

"On the several buildings and contents of their iron works as described in the form below, all situated on the east side of Morris canal, south of Communipaw avenue, in Jersey City, New Jersey. It being intended to cover in each group all the buildings and fences belonging to said company, which are now standing within the limits of said group, except by name.

"Group No. 1 consists of foundry building, core oven house, tumbling-room, grinding-room, coke sheds, iron sheds and sand shed, including additions.

"Group No. 2 consists of machine shop, testing-room, pattern shop, storeroom, boiler and engine-house.

"Group No. 3 consists of stock and storage-room, including additions.

"Group No. 4 consists of stable, feed loft and fences surrounding the property.

"Group No. 5 consists of general offices and pattern vaults.

"Divided and to apply as follows:

"$6,171.80.    On all buildings contained in Groups Nos. 1, 2, 3, 4 and 5.

"$2,880.15.    On all machines, foundations and conducts, flasks, cupolas, blowers, cranes, core shells and supplies pertaining thereto contained in Group No. 1.

"$3,703.05.    On all machinery and tools, both fixed and movable, including engines, boilers, conducts, foundations, belting, shafting and steam-pipe connections, all contained in Group No. 2.

"$3,291.55.    On all radiator, heater, boiler or other castings, pipe, nipples and iron fittings, manufactured and in the process of manufacture, and supplies contained in Groups Nos. 1, 2 and 3.

"$2,468.80.    On all stores and supplies as manufacturers, jobbers and dealers in steam and hot water heating goods, including brass and iron fittings, bronze, bronzing liquid and mill supplies, contained in Group No. 2.

"$5,760.50.    On all wooden and metal patterns of every description contained in Groups Nos. 1, 2 and 5, and no one pattern to exceed $1,000 in value.

"$230.40.    On horses, not exceeding $300 on any one horse, single and double trucks, wagons, carts, carriages, harnesses, robes, blankets and all stable utensils and feed, their own or held in trust by them, contained in Groups 1, 2, 3 and 4.

"$493.75.    On office furniture and fixtures, including safes, stationery, advertising novelties, pamphlets, catalogues, books of account and record, cabinet containing files of mercantile credit information and office supplies contained in Groups Nos. 3 and 5.

"Reference had to plan of said premises, Book 6, page 95, Jersey City insurance maps.

"And also to plan on file in the office of Patterson & Rowlands, Jersey City, N. J."  .

In the descriptive portion of the policy it will be noticed that the enumerated "Groups" refer generally to groups of buildings, but that the insurance is distributed not in accordance with the separate groups, but according to the separate items that are subsequently mentioned. The first item comprises all the insured buildings. The remaining items include personal property of various kinds, the location of each class of personal property being fixed by reference to the buildings mentioned in the groups. Then follows the reference to the maps and plans. These were introduced in evidence upon the trial.

The Jersey City insurance maps are not of material service in determining the present controversy.

The Patterson & Rowlands plan consists of several parts. One is a bird's-eye view of all the buildings of the Griffing Iron Company, with designations on each indicating the use to which it is put, the material of which it is constructed, the general form and construction of the building and the style of its roofing. Upon this part of the plan the "sand shed" is shown, under that designation, and its form, construction and style of roof are indicated. Another part of the Patterson & Rowlands plan is a ground plan of the buildings.  This shows the sand shed situate detached from the other buildings and indicates its size and other features with the same particularity that is observed in displaying the more extensive buildings. The latter buildings, however, are divided upon this ground plan into several groups by distinct red division lines, and these groups are numbered serially from one to five. The demarcation of these groups corresponds pretty closely with the distribution of the buildings among the several groups as mentioned in the printed description attached to the policy. But the sand shed, being detached from the main cluster of buildings, is, of course, not included within any of the groups thus indicated by red lines.

Another portion of the Patterson & Rowlands plan consists of explanatory marginal notes purporting to give information

of importance to insurers. Among these notes are the following: "Construction—floors of foundry, tumbling-room, basement of office and most of sand shed are incombustible. Other floors are light plank on joists. Roofs are boards on joists, supported by wood trusses." Again: "Materials of which walls of building are constructed are shown by colors—brick —red; wood—yellow; stone or iron—grey." Again: "Property not belonging to risk has only margin colored." And again: "In views, roofs are colored grey if covered with material not easily ignited, as tin, slate and graveled tar. Roofs are colored buff if covering material is easily ignited, as shingles, bare boards or tarred felt on boards." In another part of the marginal notes a dotted line is set down as the symbol for "outline of awnings and open side of sheds;" a solid line is shown as indicating "fence," and a characteristic symbol is shown as indicating "fire-ladder to roof."

The significance of these explanatory notes appears when it is mentioned that the sand shed is shown on both the bird's-eye view and the ground plan colored in solid color, whereas buildings not belonging to the risk are shown with the margin only colored. The sand shed is shown in yellow, indicating construction of wood. The main part of its roof is colored grey, indicating material not easily ignited; the remaining portion is colored buff, indicating combustible material, and upon this portion of the roof is inscribed the word "boards." Upon the grey portion is marked "P. & B. Roofing." A fire-ladder is shown at one end of the building. Upon the ground plan the dimensions of the building are given with as much particularity as is shown in the case of the other buildings. And along one of its sides is a dotted line, indicating that the shed is open on that side.

The argument of the plaintiff in error includes these propositions, viz.:

1. That "Group No. 1," as that term is used in the policy, embraced only the buildings situate within the boundaries of the group thus numbered on the Patterson & Rowlands map.

2. That the sand shed was not insured by being named in the policy, because the words "except by name" do not relate

to buildings outside the groups, but only provide against the misnomer of those within the groups; and

3. That if the sand shed was insured under the clause referred to—"except by name"—that did not bring the contents of the sand shed within the operation of the policy.

The argument, when analyzed, will be found to amount to this: That the reference to the Patterson & Rowlands plan was only for the purpose of showing what the policy did not show, viz., the limits of the several groups, and that the plan was not for any other purpose or to any other extent a part of the policy. And the argument includes the contention that the groups mentioned in the printed form upon the policy refer to the groups as shown upon the ground plan of Patterson & Rowlands, so that the grouping was intended to be by plots, and not by buildings. This statement of the argument is taken from the brief of the plaintiff in error.

It will be seen that, by selecting from all the descriptive terms of the policy the single word "group," by assigning to that word an arbitrary meaning, indicated by its use upon one part of the Patterson & Rowlands plan, and by discarding all other evidence of intention appearing upon the face of the policy and upon the plan referred to in the policy, it is possible to arrive at a conclusion satisfactory to the plaintiff in error.

But the law does not permit us thus to ignore all other descriptive terms in the policy contained and the whole spirit and purpose of the contract. The whole of the policy must be taken together, including all the terms of description. The Patterson & Rowlands plan and the Jersey City insurance map are to be referred to in aid of the descriptive portion of the policy, and no part of either plan may be rejected. Nothing can be more clear than that this policy was intended to cover all the several buildings and their contents, constituting the iron works of the insured, situate in the location mentioned. The buildings are divided into groups, not for the purpose of distributing the building insurance, for this is included in one item, but for the purpose of distributing the insurance on personal property with respect to the cus-

tomary location of such property. In the printed description the word "group" may be given a rhetorical significance. In the Patterson & Rowlands plan it may be given, of course, a geographical significance. But there is nothing in the use of the word "group" that, by any fair construction, can limit the general scope and purpose of the policy.

Much stress was laid upon the following clause of the description, viz.: "It being intended to cover in each group all the buildings and fences belonging to said company, which are now standing within the limits of said group, except by name." After this follows "Group No. 1," in which the last building mentioned is "sand shed, including additions." The words "except by name," in the connection in which they are used, evidently make necessary a somewhat loose construction of the sentence, as if it read, "Which are now standing within the limits of said group, except where a building is included within a group by name, although not standing within its limits." This explains the mention of the sand shed and additions, together with "Group No. 1," although a reference to the Patterson & Rowlands map shows that it is not included within "Group No. 1," as there shown.

It is thus abundantly evident that the sand shed and its additions, and the contents thereof, are included within the terms of the policy. The building was a part of the iron works. It was apparently included within the very boundary fences that were insured by the same policy. Its construction is particularly described upon the Patterson & Rowlands plan. It is there shown, both in the bird's-eye view and in the ground plan, with every particularity of detail. It is mentioned by name in the printed description attached to the policy, and is there included in "Group No. 1," evidently for the purpose of insuring the contents as well as the building; for if it had been intended to insure the building only, this would have been accomplished by adding it at the end of the first "item," so as to make that item read: "$6,171.80 on all buildings contained in Groups Nos. 1, 2, 3, 4 and 5, and the sand shed, including additions."

The judgment under review should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM. 14.

*For reversal*—None.